Mr. Justice SWAYNE
 

 delivered the opinion of the'eourt.
 

 The proceedings under the bill filed by the Lyons appear to have been, in all respects, regular. W. & W. Lyons had obtained a judgment at law and issued an execution, upon which the return of
 
 'nulla bona
 
 was made. This laid the foundation for a creditor’s .bill, and such a bill was filed. The necessary parties were brought before the court and answered.
 

 • The court had full jurisdiction, both as to the parties and the- property. The decree wTas regularly entered, and the sale and conveyance by the master to Bushnell were made in pursuance of it. The only objection taken to the proceedings is, that Williams, in whom was vested the legal title, was not ordered to convey, and did not convey. A conveyance by him was not necessary. .
 

 Where a court of equity has jurisdiction, as in this case, a sale and conveyance in obedience to a decree is as effectual to convey the title as the deed of a sheriff, made pursuant to a sale under'an execution issued upon a judgment at law. When the obj ect of the suit is to compel the conveyance of the
 
 *249
 
 legal title by the defendant, and the decree does not require a sale, the title will not pass until the deed is executed, — unless -it be provided, as has been done in some of the States, by statute, that the decree itself shall operate as a conveyance. In all such cases, the court has power to compel the defendant to convey. "When the property is beyond the local jurisdiction of the court, and the defendant is before it, the court can compel him to convey, as it may direct, for any purpose within the sphere of its authority. This is an ordinary exercise of the remedial j urisdiction of those courts, and the power is one of the most valuable attributes of the equity system. The principle of those cases has no application here. The title derived by Bushnell from these proceedings must be deemed perfect, unless it be invalidated by that derived to Benedict from the sale and conveyance under the bill of Mills & Bliss.
 

 ' The judgment obtained by Mills & Bliss, was the elder one, but it was subsequent to the conveyance from Miller to Williams. It is not contended that the judgment was a lien on the premises. ' The legal title having passed from the judgment debtor before its rendition, by a deed valid as between him and his grantee, it could not have that effect by operation of law. The questions to be considered arise wholly out of the chancery proceedings.
 

 The-filing of a creditor’s bill and the service of process creates a lien in equity upon the effects of the judgment debtor.
 
 *
 
 It has been aptly termed an “equitable levy.”
 
 †
 

 The original bill was in the form of a creditor’s bill, as found in the appendix to Barbour’s Chancery Practice. It contained nothing specific, except as to the transactions between Miller and Richardson. There was no other part of the bill upon which issue could have been taken as to any particular property. It was effectual for the purpose of creating a general lien upon the assets of Miller, — as the
 
 *250
 
 means of discovery, and as the foundation for an injunction., — and for an order that he should convey to a receiver. If it became necessary to litigate as to any specific claim, other than that against Richardson, an amendment to the bill would have been indispensable. It did not create a
 
 lis pendens,
 
 operating as notice, as to any real estate. To have that effect, a bill must be so definite in the description, that any one reading it can learn thereby what property is intended to be made the subject of litigation. In
 
 Griffith
 
 v.
 
 Griffith,
 

 *
 

 it is said:
 

 “ To have made such a bill constructive notice to a purchaser from the defendant therein, it would have been necessary to allege therein that these particular lots, or that all the real estate of the defendant in the city óf New York, had been purchased and paid for, either wholly or in part, with the funds of the infant complainant. Or some other charge of a similar nature should have been inserted in the bill, to enable purchasers, by an examination of the bill itself, to see that the complainant claimed the right to, or some equitable interest in, or lien on, the premises.”
 

 It is evident that the premises in controversy were not in the mind of the pleader when this bill was drawn.
 

 There is another reason why the bill could not operate as constructive notice. Williams, who held'the legal title, was not a party. “We apprehend that to affect a'party as a purchaser
 
 pendente lite,
 
 it is necessary to show that the holder of the legal title was impleaded before the purchase which is to be set aside. ”
 
 †
 
 The principle applies only to those who acquire an interest from a defendant
 
 pendente lite.
 

 ‡
 

 The title passed from Williams to Bushnell.
 

 The amended bill was undoubtedly sufficient, and it made Williams a party. But he was not served with process, and if he had been, this bill could have operated only from the time of the service. Where the question of
 
 lis pendens
 
 arises
 
 *251
 
 upon an amended bill, it is regarded as an original bill for that purpose.
 
 *
 
 It was a gross irregularity to take a decree against Miller without "Williams being before the court,,and' if the attention of the court had been called to the subject, the amended bill must have been dismissed. The decree against Miller as to the premises' in controversy is a legal anomaly. But it is unnecessary to consider this subject, because before the amended bill was filed, the proceedings under the bill of the Lyons had been brought to a close, and the title of Bushnell consummated. His rights could not be affected by anything that occurred subsequently. He.had no
 
 constructive notice
 
 of the proceedings in the case of Mills & Bliss. Had he and his alienee actual notice? This, also, is a material inquiry.
 
 †
 
 We have looked carefully through the record and find no evidence on the subject. Had the suit below been in equity, it would havé been necessary for the defendant in.error tó deny notice to himsplf or to his grantor. The want of notice to either would have been sufficient. The form of the action rendered a denial unnecessary. The plaintiff having exhibited a title, apparently perfect, the burden was cast upon the defendant of proving everything upon which he relied to defeat it. | As the case was developed on the trial in the court below, the title of the defendant in error properly prevailed.
 

 2. In regard to the homestead right claimed by the plaintiff in error, there is no difficulty. The decree under which the sale wras made to Bushnell expressly divested the defendant of all right and interest in the premise^. It cannot be collaterally questioned. Until reversed, it is conclusive upon the parties, and the reversal would not affect a tijtle acquired under it while it was in force.
 

 We think that the learned judge who tried the case below, was correct in refusing to give the instructions submitted by the plaintiff in error, and in giving those to which exception was taken.
 

 .Judgment affirmed with costs.
 

 *
 

 Bayard
 
 v.
 
 Hoffman, 4 Johnson’s Chancery, 450; Beck
 
 v.
 
 Burdett, 1 Paige, 308; Slorm
 
 v.
 
 Waddel, 2 Johnson’s Chancery, 494; Corning
 
 v.
 
 White, 2 Paige, 567; Edgell
 
 v.
 
 Haywood, 3 Atkyns, 352; 1 Kent, 263.
 

 †
 

 Tilford et al.
 
 v.
 
 Burnham et al., 7 Dana, 110.
 

 *
 

 9 Paige, 317.
 

 †
 

 Carr
 
 v.
 
 Callaghan, 3 Littell, 371.
 

 ‡
 

 Stuyvesant
 
 v.
 
 Hall, 2 Barbour's Chancery Rep. 151: Penwick's Admr. Macey, 2 B. Monroe, 470; Parks
 
 v.
 
 Jackson, 11 Wendell, 442.
 

 *
 

 Clarkson et al.
 
 v.
 
 Morgan's devisees and others, 6 B. Monroe, 441.
 

 †
 

 Parks
 
 v.
 
 Jackson, 11 Wendell, 442; Roberts
 
 v.
 
 Jackson, 1 Id. 478.