# P. A. Lane v. Union National Bank of Chicago et al.

# Edward Browne et al. v. Union National Bank of Chicago et al.

1.  CONSIDERATION—*Pre-existing Debts Sufficient Consideration for Note Given as Additional Security.*—A judgment note may be legally given as security for a pre-existing debt, and when so given is not open to the objection of want of consideration.

2.  DECREES—*The Findings of a Chancellor Not Disturbed Unless Clearly Against the Evidence.*—The findings of a chancellor upon the testimony of witnesses examined in open court, will not be disturbed on appeal unless clearly against the evidence.

3.  CONVEYANCES—*Without Consideration Good Except as to Bona Fide Creditors.*—A properly executed conveyance of real estate, although without consideration, is effective to pass the title to the premises described against the grantor and all the world except *bona fide* creditors.

4.  CREDITOR'S BILLS—*Priority Under—Priority of Judgment of no Effect.*—The fact that a judgment held by one creditor was rendered before that held by another, is of no significance in determining priorities in a suit in equity to set aside a fraudulent conveyance, as it is the

filing of the bill and service of process on the grantee ir the fraudulent conveyance which creates an equitable lien and gives the complainant priority over other creditors.

5. FRAUDULENT CONVEYANCES—*May be Set Aside. Although There Has Been no Return of Execution Unsatisfied.*—It is not necessary, to sustain a bill by a judgment creditor, to set aside a fraudulent conveyance by his debtor, that an execution shall have been returned unsatisfied.

6. EQUITY—*Relief Under General Prayer.*—Such specific relief as the allegations of the bill and the proofs warrant will be granted under a prayer for general relief.

7. LEVY—*Effect of, on Priorities in Suit to Set Aside a Fraudulent Conveyance.*—The fact that an execution was levied on certain real estate and a certificate of such levy recorded does not give the judgment creditor priority in equity in proceedings to set aside a fraudulent conveyance of such real estate where the execution was returned unsatisfied and no sale made in pursuance of the levy.

**Creditor's Bill**, and cross-bills by other creditors. Appeals from the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in this court at the October term, 1897. Affirmed in part, reversed in part, and remanded with directions. Opinion filed April 18, 1898.

JOHNSON & MORRILL, attorneys for appellant P. A. Lane.

CUSTER, GODDARD & GRIFFIN, attorneys for appellants Edward Browne et al.

TENNEY, McCONNELL, COFFEEN & HARDING, attorneys for appellees.

MR. PRESIDING JUSTICE ADAMS DELIVERED THE OPINION OF THE COURT.

These are appeals from a decree rendered on a bill filed December 13, 1893, by the Union National Bank of Chicago against Samuel B. Barker, the appellants Lane, Browne and others. The bill was filed to set aside an alleged fraudulent conveyance of certain property, hereinafter described, by Samuel B. Barker to his wife, Aura W. Barker, in aid of an execution issued on a judgment theretofore rendered in favor of the bank and against Samuel B. Barker. Lane, Browne and others of the defendants answered the bill, and Lane

and Browne et al. filed cross-bills, setting up certain judgments recovered by them, respectively, against the bank, claiming that the note on which the bank recovered judgment was without consideration, and claiming priority of lien, etc.

The court found that the conveyance of the realty described in the bill by Samuel B. Barker to his wife was fraudulent, and ordered its sale and decreed the distribution of the proceeds of sale among the judgment creditors who were parties to the suit, after payment of the costs and expenses of the suit, and also after the payment to Aura W. Barker of the sum of $1,000, on account of her homestead rights in the premises. The decree gives to the Union National Bank the first lien, to appellant Lane the second, and to appellants Browne and others the third, the proceeds of the sale to be distributed in that order.

Two questions are presented for consideration. First, whether there was a good and valid consideration for the note on which the bank recovered judgment against Samuel B. Barker; and, secondly, which, as between appellant Lane and the bank, is entitled to priority.

The facts are as follows: The Union National Bank recovered judgment in the Circuit Court of Cook County against Samuel B. Barker May 31, 1893, for the sum of $50,732.75 and costs, and execution was issued on said judgment the same day, and was returned by the sheriff August 29, 1893, " no part satisfied." Annexed to the execution was the following :

" By virtue of the annexed writ of execution, No. 42,931, issued from the Circuit Court of Cook County, in favor of The Union National Bank of Chicago, plaintiff, against Samuel B. Barker, defendant, I did, on the 3d day of June, 1893, levy upon all the right, title and interest of said defendant in and to the following described property, situated in the county of Cook and State of Illinois, to wit :

" Lots 30 and 31, except the north 4 feet thereof, in Joseph Smith's subdivision of the W. ½ of block ninety (90) in the Canal Trustees' subdivision of the W. ½ of Sec. 27, T. 39, N.,

R. 14 E. of 3d P. M., and I have filed certificates of levy thereon.

JAMES H. GILBERT, Sheriff.
By W. H. WEBER, Deputy."

A certificate, in substance the same as the foregoing, was filed for record in the office of the recorder of deeds June 5, 1893.

The above mentioned judgment was entered by confession on a note of date May 5, 1893, executed by Samuel B. Barker, payable to the order of the Union National Bank of Chicago on demand, for the sum of $50,516.53, with interest at seven per cent per annum, attached to which is a warrant of attorney to confess judgment at any time.

June 28, 1893, appellant Lane recovered judgment against Samuel B. Barker in the Superior Court of Cook County, for the sum of $3,516.50 and costs, on which execution was issued and delivered to the sheriff the same day. The return is dated September 26, 1893, and is "no property found and no part satisfied after demand made," and was filed in court October 13, 1893. July 2, 1893, Lane recovered another judgment against said Barker in said Superior Court, for the sum of $2,701.19 and costs, and the same day execution issued on said judgment and was delivered to the sheriff, and was thereafter returned "no property found and no part satisfied after demand made." The indebtedness for which the first Lane judgment was rendered was contracted May 9, 1893, and that for which the second Lane judgment was rendered, May 29, 1893.

July 1, 1893, appellant Lane filed, in the Superior Court of Cook County, a bill in the usual form of a creditor's bill, making the Union National Bank of Chicago, S. B. Barker and Aura W. Barker defendants, setting up the recovery of the judgment above rendered June 28, 1893, the issue and delivery to the sheriff of an execution on the judgment and the return thereon, June 30, 1893, demand made, refusal, and no part satisfied. The bill contains, among other averments, the following:

"And your orator further represents that he is informed and believes, and so states the fact to be, that the said defendant, S. B. Barker, on or before the 29th day of May, 1893, was the owner of, and held the title to the following described real estate, to wit: Lots thirty (30) and thirty-one (31), except the north eleven (11) feet of said lot thirty-one (31), in Smith's subdivision of the west half of block ninety (90), in the Canal Trustees' subdivision of the west half of section twenty-seven (27), township thirty-nine (39) north, range fourteen, east of the third principal meridian, situated in the county of Cook and State of Illinois; and that, on or about the day aforesaid, said defendant, S. B. Barker, conveyed and transferred to his wife, Aura W. Barker, party defendant hereinafter named, all of said property above described, and that such transfer was made without any consideration whatever. And your orator expressly charges that said transfer was made by the said defendant, S. B. Barker, for the purpose of hindering, delaying and defrauding his creditors," etc. The bill contains, among other prayers, a prayer for general relief. Summons issued on this bill, and was returned served on all the defendants July 7, 1893.

July 11, 1893, appellant Lane filed another similar bill in the Superior Court of Cook County against the same defendants, setting up the judgment recovered by him July 6, 1893, the issue and delivery to the sheriff of an execution on said judgment, and a return thereof no property found and wholly unsatisfied. This bill contains substantially the same allegations in respect to the conveyance by S. B. Barker to his wife as the bill filed July 1st, and contains, among other prayers, a prayer for general relief. Summons issued on the last bill was returned served on Barker and wife July 14, 1893, and on the bank July 18, 1893.

The only contention of Edward Browne and his co-appellants is, that the note on which judgment was rendered in favor of the Union National Bank was without consideration, and that therefore the judgment is void as to other creditors. Appellants Browne et al. allege in their cross-

bill that the judgment of the bank was not rendered upon any indebtedness of Barker to the bank, that the note on which the judgment was rendered was without consideration and that the judgment is void as to cross-complainants.

The cross-bill of appellant Lane contains substantially the same allegations. Proof of these allegations was incumbent on appellants. Appellant Lane called as a witness John J. P. Odell, who testified that in May, 1893, he was president of the Union National Bank, and that May 5, 1893, Samuel B. Barker owed the bank $172,000 on his notes held by the bank, in addition to his indorsements and guaranties on paper of third persons, and also that in addition to the $172,000 he owed the bank $60,700 overdraft on his account, and that the judgment note of May 5, 1893, on which judgment was confessed, was given by Barker as additional security. The witness further testified that May 29 and 30, 1893, the overdraft was reduced to $32,500 by discount of additional bills, and that, after May 5, 1893, other notes of Barker which the bank held were extended from time to time, and that Barker, May 5, 1893, gave to the bank, notes, including the judgment note in question, to the amount of $300,000, as collateral security for his indebtedness to the bank. This evidence, which was substantially all the evidence offered in support of the allegation that the judgment note was not given, nor the judgment rendered for any indebtedness of Barker to the bank, manifestly failed to prove the allegation. On the contrary, it proved an indebtedness of Barker to the bank, at the time of the execution of the note and the rendition of the judgment greatly in excess of the amount of the judgment.

It was proved that the judgment note of May 5, 1893, was given merely as additional collateral security for Barker's indebtedness to the bank, and counsel for Brown et al. insist that this being the case, the note was without consideration. We can not perceive any force in this contention. Barker being largely indebted to the bank apparently desired to place the bank in a position where it could at any time thereafter secure a lien on his property. This he had

a perfect right to do, and his indebtedness to the bank was ample consideration for his so doing. Suppose that he had appeared in open court in his own proper person and confessed judgment in favor of the bank for the amount of the note, his indebtedness to the bank being largely in excess of that amount, it certainly could not be said that a judgment rendered on such confession was without consideration. In the present case he confessed judgment by his attorney, which in legal contemplation was a confession by himself. The difference is only in form. If the indebtedness was sufficient to sustain a judgment, we can not perceive how it was insufficient to sustain a warrant of attorney to confess judgment. We do not regard the cases cited by counsel for appellants, on the question of want of consideration for the judgment note, as analogous in their facts to the present case or at all in point. Appellants have utterly failed to prove that the judgment note was not given in consideration of indebtedness of Barker to the bank, due and payable when the note was given. The evidence that there were some notes of Barker extended after the note in question was given, fails to show what notes or for what amounts, and the evidence tends to show that, at the time of the hearing, Barker was indebted to the bank more than $200,000. The evidence was heard in open court, and in such case, unless the finding is clearly and manifestly against the evidence, we would not be warranted in disturbing it. Miltimore v. Ferry, 171 Ill. 219.

The next question is, which, as between appellant Lane and the bank, is entitled to its priority?

Appellees' bill was filed December 13, 1893, and the bills of appellant Lane were filed respectively, July 1 and July 11, 1893, and summonses issued on them were served as before stated. Appellees, therefore, can only claim priority over appellant Lane by virtue of the following facts, or some of them, namely, the securing of judgment May 31, 1893; the suing out execution the same day; the levying of the execution on the property in question June 3, 1893; the recording of said certificate of levy June 5, 1893, and the return

of the execution "no part satisfied" August 29, 1893. The conveyance from Samuel B. Barker to Aura W. Barker was effective to pass the title to the premises conveyed against the grantor and all the world except *bona fide* creditors. In Willard v. Masterson, 160 Ill. 443, the court say: "It is true, the deed of Mrs. Willard and husband to Mrs. Snyder was good and effective to pass the title of the debtor as against her and all the world, except *bona fide* creditors. This doctrine has been repeatedly announced by the Supreme Court. Moore v. Horsley, 156 Ill. 36; Hallorn v. Trum, 125 Ill. 247; Springfield Homestead Ass'n v. Roll, 137 Ill. 205; Tyler v. Tyler, 126 Ill. 525; Rappleye v. International Bank, 93 Ill. 396. When a judgment debtor has no title of any kind, it would seem that the creditor can not acquire title by a levy and sale under execution against such debtor." See also the following cases: Lyon v. Robbins, 46 Ill. 276; Rappleye v. International Bank, 93 Ill. 396; Davidson v. Burke, 143 Ill. 139; Miller v. Sherry, 2 Wall. 249; In re Estes, 3 Fed. Rep. 141; Neal v. Foster, 36 Fed. Rep. 41.

The fact that appellees' judgment was prior to those of appellant Lane is of no significance, because it is the filing of the bill and service of process on the grantee in the fraudulent conveyance which creates an equitable lien. Hallorn v. Trum; Lyon v. Robbins; Rappleye v. International Bank; Davidson v. Burke; and other cases cited *supra*.

Had appellee elected to treat the deed from Barker to his wife as a nullity, and caused a sale to be made of the premises levied on prior to the filing of its bill, it might then have proceeded by bill in equity to have the fraudulent conveyance set aside (Willard v. Masterson, *supra*), but this it did not. On the contrary, appellee relied solely on the levy and the recording of a certificate of the levy. The recording of the certificate of levy was a non-effective act, as the statute makes no provision for the recording of such certificates in the county in which the execution is issued and the levy made, but only in cases of execution issued in one county and levied in another.

Appellees' counsel object that the executions issued on the judgments of appellant Lane were not returned and filed in court until October 13 and 14, 1893, respectively, and therefore there was no sufficient basis for appellants' creditors' bills filed July 1 and July 11, 1893; citing Hogue v. Corbit, 156 Ill. 540, to the effect that the return of process by the sheriff is the actual placing of it in the office whence it issued. The bills of appellant Lane, however, are more than mere creditors' bills. While they contain the usual allegations of creditors' bills, and seek a discovery of assets, they also describe the real property in question, and allege that its conveyance by Barker to his wife was without consideration, and was fraudulent as to creditors. Each bill also contains a prayer for general relief.

It is not necessary, to sustain a bill by a judgment creditor to set aside a fraudulent conveyance by his debtor, that an execution shall have issued and been returned unsatisfied. Dillman v. Nadelhoffer, 162 Ill. 625; Wisconsin Granite Co. v. Gerrity, 144 Ill. 77; Newman v. Willetts, 52 Ill. 98; Weightman v. Hatch, 17 Ill. 281.

In Miller v. Sherry, 2 Wall. 237, an ordinary creditor's bill amended so as to describe the premises alleged to have been fraudulently conveyed, and setting forth the names of the grantor and grantee in the conveyance, was held sufficient to reach the premises, although it failed because of the priority of another party. (Pp. 239, 250.) Such specific relief as the allegations of the bill and the proofs warrant will be granted under the prayer for general relief. McGhee v. Wright, 16 Ill. 555; Isaacs v. Steel, 3 Scam. 97; Bruner v. Manlove, 3 Scam. 339; Vansant v. Allmon, 23 Ill. 30; Stanley v. Valentine, 79 Ill. 544; Cushman v. Bonfield, 139 Ill. 219, 247; Hubbard v. United States Mortgage Co., 14 Ill. App. 40; Watts v. Waddle, 6 Peters, 391.

Appellant Lane having, by his bills, first pointed out the property in question, and sought to have it applied to the satisfaction of his judgments, is entitled to priority in the distribution of the proceeds of the sale of the property. The decree will be reversed, in so far as it purports to give

appellee, the Union National Bank, priority over appellant Lane in the distribution of the proceeds of the sale of the property described in the decree, and the cause remanded, with directions to give to appellant Lane priority over appellee, the Union National Bank, in the said distribution; in other words, to reverse the order of distribution as between said appellant and appellee; and the decree, in all other respects, will be affirmed.

Affirmed in part and reversed in part, and remanded with directions.